UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY ALLEN FRANKS,

                Plaintiff,                Case No. 5:06-cv-164

v.                                            Honorable Paul L. Maloney

JOHN S. RUBITSCHUN et al.,

                Defendants.
_____/

## **OPINION**

      This prisoner civil rights action was remanded by the Sixth Circuit Court of Appeals in *Franks v. Rubitschun,* 312 F. App'x 764 (6th Cir. 2009) to allow this Court to address Plaintiff's equal protection claim under the class-of-one theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) and refined in *Engquist v. Or. Dep't of Agric.*, 553 U.S. ----, 128 S. Ct. 2146 (2008). Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards in accordance with the Sixth Circuit's remand, Plaintiff's class-of-one equal protection claim will be dismissed for failure to state a claim.

**Discussion**

I.      Facts and Procedural History

On October 14, 1999, Plaintiff pleaded guilty to first-degree criminal sexual conduct in Barry County Circuit Court for inappropriate sexual behavior with his nine year-old adoptive brother. (Attach. to Compl. at 1-2, docket #1.) The trial court sentenced Plaintiff to 42 to 140 months' imprisonment on November 4, 1999. (*Id.* at 1.)

On October 23, 2006, Plaintiff filed this action against John Rubitschun, Chairman of the Michigan Parole Board, and the following members of the Michigan Parole Board: Marianne Samper, Charles Braddock, Stephen DeBoer, George Lellis, Stephen Marschke and William Slaughter (collectively, the Michigan Parole Board), for violating several of his constitutional rights. On January 9, 2007, Plaintiff's action was dismissed by this Court for failure to state a claim. Plaintiff subsequently filed an appeal with the Sixth Circuit Court of Appeals. On appeal, Plaintiff abandoned all of his claims except an equal protection claim under the class-of-one theory. The Sixth Circuit summarized Plaintiff's claim as follows:

> Michigan's policies do not permit members of the parole board knowingly to insert falsified information into a prisoner's parole file, nor do they permit members to base a denial of parole on such information. The parole board has deviated from this policy, however, in its treatment of [Plaintiff], and it has done so on the basis of personal animus, rather than on any rational basis.

(Order at 5, docket #10.) Pursuant to the Sixth Circuit's order of remand, this Court will address Plaintiff's class-of-one equal protection claim.

The parole board first denied Plaintiff's parole on May 19, 2002 for the following reasons:

> The assaultive crime, Current offense is CSC crime.
> The sexually motivated crime: Violating a position of trust or authority.
> Involved a family member or acquaintance, involved minor/child victim, shows an established pattern of behavior, demonstrates pedophillic tendencies.

> Correctional Adjustment: The behavior reflected in the misconducts, resulted in security reclass, shows that prisoner has received misconducts since coming to MDOC or since last PBI, shows criminal behavior while incarcerated.

(Attach. to Compl. at 4, docket #1) (quotation marks omitted.)

On February 24, 2003, Plaintiff completed the MDOC Sexual Offender Therapy Program. (*Id.* at 4.) On July 1, 2003, however, the parole board denied Plaintiff's parole for the second time. In its denial, the parole board stated that the sexually motivated crime demonstrated "pedophillic tendencies, involved a family member or [acquaintance], show[ed] an established pattern of behavior, violated a position of trust or authority, [and] involved [a] minor/child victim." (Attach. to Compl. at 5.) Plaintiff noted that the parole board did not refer to any misconduct reports in the 2003 parole denial.

On July 23, 2004, the parole board denied Plaintiff's parole for a third time. The parole board provided the following reasons for its denial:

> The assaultive crime, history of /or currently serving for CSC.
> The sexually motivated crime, involved a family member or acquaintance, violated a position of trust or authority, [and] involved [a] minor/child victim.
> Correctional Adjustment, [t]he behavior reflected in the misconduct, this is a disciplinary time case[.]

(Attach. to Compl. at 5) (quotation marks omitted.) Plaintiff notes that the parole board did not identify any misconducts in its report.

The parole board denied Plaintiff's parole for a fourth time on July 15, 2005. In its analysis, the parole board stated:

> The assaultive crime, history of /or currently serving for CSC.
> The sexually motivated crime, involved a family member or acquaintance, violated a position of trust or authority, involved [a] minor/child victim.
> Correctional Adjustment, the behavior reflected in the misconducts, this is a disciplinary time case[.]

> The prisoner has a history of substance abuse which is of long standing duration.

(Attach. to Compl. at 6) (quotation marks omitted.) Plaintiff argues that the parole board did not identify any misconducts in its decision. Further, Plaintiff states that he has never had a history of substance abuse. (*Id.* at 6.)

On June 27, 2006, Plaintiff received his fifth parole denial. The parole board provided the following reasons for Plaintiff's fifth parole denial:

> The assaultive crime, history of /or currently serving for CSC.
> The sexually motivated crime, involved a family member or acquaintance, violated a position of trust or authority, involved [a] minor/child victim.
> Correctional adjustment, shows the prisoner has received misconducts since coming to MDOC or since last PBI, this is a disciplinary time case.

(Attach. to Compl. at 7) (quotation marks omitted.) Plaintiff argues that he has only received "minimal" major misconduct reports. (*Id.* at 8.) Plaintiff also claims that the Michigan Parole Board discriminated against him because he was convicted of CSC involving a minor child. (*Id.* at 9-10.) Finally, Plaintiff states that the Michigan Parole Board has ignored Plaintiff's rehabilitative progress. (*Id.*) [1]

For relief, Plaintiff requests monetary damages and injunctive relief. (Compl. at 5.)

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While

---

[1] According to the Michigan Department of Corrections (MDOC) Offender Tracking Information System, Plaintiff was paroled on July 1, 2009. *See* the Michigan Department of Corrections' Offender Tracking Information System at http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=299597.

- 4 -

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      A.    **Equal Protection Clause**

On appeal, Plaintiff abandoned all of his constitutional claims except for a class-of-one equal protection claim. As stated above, Plaintiff alleges that the Michigan Parole Board, without rational

basis, deviated from a policy that prohibits its members from considering false information with respect to his parole. (Order at 5, docket #10.) Specifically, Plaintiff claims that the Michigan Parole Board overlooked his rehabilitative progress, inappropriately considered a nonexistent substance abuse history and misstated Plaintiff's major misconduct charges with respect to Plaintiff's parole. (Attach. to Compl. at 9-10.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Equal Protection Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects. *City of Cleburne*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Commonwealth of Virginia*, 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally."). Specifically, the Equal Protection Clause prohibits discrimination by the government which either: 1) burdens a fundamental right; 2) targets a suspect class; or 3) "intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). Here, Plaintiff alleges a violation of the third type, which is commonly known as the class-of-one theory.[2] Because neither

---

[2]Plaintiff does not argue that he is entitled to strict scrutiny. "Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). Plaintiff is not a member of a suspect class because prisoners are not considered a suspect class. *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *see also Hadix*, 230 F.3d at 843; *Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). Moreover, convicted sex offenders are not a suspect class, and, therefore, any laws or classifications that they may be subject to are reviewed under the rational-basis test. *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999). In addition, the Michigan parole policy does not implicate a fundamental right because there is no constitutional right to release on parole. *Bd. of Pardons v. Allen,* 482 U.S. 369, 373 (1987); *Jackson,* 411 F.3d at 619; *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994). Plaintiff

a fundamental right nor a suspect class is at issue, the rational-basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005)).

The United States Supreme Court first recognized the class-of-one theory for equal protection in *Olech*, 528 U.S. at 564.[3] To prove his equal protection claim under this theory, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564 (citing *Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County*, *W. Va.*, 488 U.S. 336 (1989) and *Sioux City Bridge Co. v. Dakota County*, *Neb.*, 260 U.S. 441 (1923)). The Supreme Court recently refined the class-of-one theory by eliminating rational basis review in the government employment context and in certain other discretionary state actions. *See Engquist*, 128 S. Ct. at 2154.

1. **Class-of-One Theory under *Engquist***

Because the Michigan Parole Board's decision to deny or grant parole is inherently discretionary, this Court will first analyze Plaintiff's case under the Supreme Court's decision in

---

therefore does not satisfy the heightened standard needed to trigger strict scrutiny.

[3]In *Olech*, the village required a 15-foot easement from property owners in order to connect their property to the municipal water supply but singled out the plaintiff by requiring him to grant a 33-foot easement to the village. *Olech*, 528 U.S. at 563. "This differential treatment [of like-situated property owners] raised a concern for arbitrary classification, and [the Court] therefore required the State to provide a rational basis for it." *Engquist,* 128 S. Ct. at 2153-154.

*Engquist*, 128 S. Ct. 2146. The *Engquist* Court specifically held that the class-of-one theory of equal protection is a poor fit in the public "employment context" when the government is the employer because employment decisions typically are often "subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Engquist*, 128 S. Ct. at 2154. In *JDC Management, LLC v. Reich,* 644 F.Supp.2d 905, 920 (W.D. Mich. 2009), this Court also held that *Engquist's* rationale "*strongly* suggests that the class-of-one theory is unavailable in other contexts where government officials must make subjective discretionary decisions," such as in the government's role as a sovereign and regulator. In *JDC,* the plaintiff claimed that the Michigan Lottery Commission's denial of applications for temporary charitable-gaming events to anyone who wished to hire JDC or JDC's premises for its event violated the Equal Protection Clause under the class-of-one theory. *JDC,* 644 F.Supp.2d at 908, 915-17. "[E]ven in the unlikely event that the class-of-one theory applies," this Court held, JDC failed to establish an class-of-one theory equal protection violation under rational basis review. *JDC,* 644 F.Supp.2d at 937-38.

In *JDC,* this court interpreted the *Engquist* decision to prohibit class-of-one claims whenever a government official makes a subjective and individualized discretionary decision, as follows:

> Technically, the [*Engquist*] Court's holding was only that decisions made by the government in its role as employer do not fit *Olech's* justification for the class-of-one theory. In explaining its rationale, however, the *Engquist* Court used language which can be read to preclude the class-of-one theory *whenever* a government official must make an inherently discretionary decision that involves subjective individual-specific determinations. In fact, it is difficult to read *Engquist* otherwise. Chief Justice Roberts' majority opinion stated a broad rule which necessarily sweeps beyond the government-public context:
>
>> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that "people should be treated alike, under like circumstances and conditions," is not violated when one person is treated differently

> than others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
>
> Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. * * * Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns.
>
> But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision [to complain] that it was subjective and individualized.

*Engquist*, 553 U.S. at ----, 128 S. Ct. at 2154. The breadth of *Engquist's* language militates against the notion that the class-of-one theory is available so long as the plaintiff is not a government employee. Note how the Court described the common thread uniting the government-employee and speeding-ticket situations: both involved plaintiffs misusing the Equal Protection Clause to complain that "a subjective, individualized decision ... was subjective and individualized." *Engquist*, 553 U.S. at ----, 128 S. Ct. at 2154. That is a categorical rejection of class-of-one challenges to subjective, individualized discretionary government decisions, not a rejection peculiar to the government-employment or traffic-enforcement contexts. Right after that, the Court wrote,

> This principle applies *most clearly* in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify.

*Engquist*, 553 U.S. at ----, 128 S. Ct. at 2154 (emphasis added). The Court chose its language carefully. By saying that the principle (the inapplicability of the class-of-one theory) applies "most clearly" in the employment context, the Court strongly implied that it also applies in other contexts.

*Therefore, the most natural reading of Engquist is this: (1) if the plaintiff is a government employee challenging a decision made by a government in its role as*

> *employer, the class-of-one theory is automatically not available, and (2) if the plaintiff instead challenges a decision made by [a] government in some other role (such as sovereign, enforcer of criminal or traffic laws, or regulator), the trial court must determine whether the circumstances fit Engquist's rationale. To comport with Engquist's rationale, the class-of-one theory will not be available if the challenged decision was necessarily subjective and based on an assessment of the plaintiff's personal characteristics (other than per se suspect classifications like race and sex).*

*JDC Mgmt., LLC,* 644 F.Supp.2d at 921-22 (footnote omitted) (emphasis added). Based on the above reasoning, this court concluded that *Engquist* did not purport to limit class-of-one cases to only "claims brought by government employees" or "claims challenging decisions by law-enforcement officials." *Id.* at 923; *see also Robertson v. City of Grand Rapids,* No. 1:06-cv-451, 2008 WL 4822218, at *9-10 (W.D. Mich. Nov. 4, 2008).

As this case involves the inherently discretionary decision of the Michigan Parole Board, the Court will apply the two *Engquist* scenarios described by *JDC,* to the facts of this case. *See JDC,* 644 F.Supp.2d at 922. The first scenario does not apply to Plaintiff because Plaintiff is not a government employee challenging a decision made by the government as an employer. At the time Plaintiff filed his action, he was a state prisoner. For the second scenario, this Court must determine whether the challenged decision of the Michigan Parole Board was "necessarily subjective and based on an assessment of the plaintiff's personal characteristics (other than *per se* suspect classifications like race and sex)."[4] *JDC Mgmt., LLC,* 644 F.Supp.2d at 922. The following language from *Foster v. Booker,* --- F.3d ----, Nos. 08-1371, 08-1372, 08-1626, 2010 WL 546495, at *2 (6th Cir. Feb. 18, 2010), is particularly appropriate:

> Once an inmate comes within the [Michigan Parole] Board's jurisdiction, the Board may parole the inmate at any time, . . ., although "release on parole is discretionary with the parole board," [Mich. Comp. Laws] § 791.234(11). At all times relevant to

---

[4]This Court previously concluded in footnote 2 that Plaintiff does not satisfy the heightened standard for strict scrutiny.

> this lawsuit, the statutory discretion has been limited by the requirement that a "prisoner shall not be given liberty on parole until the [Michigan Parole B]oard has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." [Mich. Comp. Laws] § 791.233(1)(a).

Moreover, the following are valid considerations for the Michigan Parole Board to decide whether to release a convicted sex offender on parole: "[r]ecidivism, community safety, the degree of success (and failure) of remedial programs for sex offenders in general and pedophiles in particular, and the consequences to the community of an erroneous decision to release." *Barker v. Conerly,* No. Civ. 05CV74408DT, 2006 WL 305643, at *3 (E.D. Mich. Feb. 9, 2006) (citing *Juarez v. Renico*, 149 F.Supp.2d 319, 325 (E.D. Mich. 2001)). Finally, "[c]onsideration of the nature of a particular offense of an inmate" as well as the inmate's prison history is clearly rational and not arbitrary. *Green v. Livingston,* No. 2:08-cv-101, 2009 WL 1788419, at *4 (W.D. Mich. June 19, 2009)(Bell, J.); see, e.g., Bell v. Anderson, 301 F App'x 459, 462-63 (6th Cir. 2008) (Daughtrey, McKeague, D.J. VanTatenhove).

The Michigan Parole Board's decision is necessarily subjective because it must consider several factors that are specific to a particular prisoner and not objectively quantifiable or verifiable before granting parole. In all five denials of Plaintiff's parole, the Michigan Parole Board cited Plaintiff's sexually assaultive crime against a young family member as a reason to deny his parole. In four out of the five parole denials, the Michigan Parole Board also considered Plaintiff's assaultive crime and correctional adjustment before denying his parole. As stated above, there are multiple other factors that the Michigan Parole Board considers before its decision, such as a prisoner's mental and social attitude, public safety and recidivism. Because the decision by the Michigan Parole Board is necessarily subjective and rests on several factors, including the personal

characteristics of Plaintiff as well as his criminal and prison history, Plaintiff's case falls within the second scenario, and, thus, *Engquist's* rationale.

Moreover, several courts have extended *Engquist's* rationale to parole denials. In *Green*, 2009 WL 1788419, at *4, the plaintiff argued that other second-degree murder offenders, who had identical or worse disciplinary records than him, and did not accept their responsibility as well as plaintiff, were paroled. The court found that discretion to grant parole is "squarely lodged with the Parole Board." *Id.* at *5 (citing *Sweeton,* 27 F.3d at 1164-165). Applying *Engquist,* the court held that the plaintiff failed to state an equal protection claim because parole considerations are the type of discretionary decisions that do not violate a plaintiff's equal protection rights. *Id.* at *4-5. The Seventh Circuit also denied a prisoner's class-of-one claim regarding his parole in *Adams v. Meloy,* 287 F. App'x 531, (7th Cir. 2008). In that case, the prisoner argued that the parole board treated him unfairly because he killed a police officer. The Seventh Circuit held that the parole board's "inherent discretion necessitates that some prisoners will receive more favorable treatment than others." *Id.* at 534; *see also Siao-Pao v. Connolly*, 564 F.Supp.2d 232, 245 (S.D.N.Y. 2008) (extending *Engquist* to bar class-of-one challenge to parole board's decision to deny parole because of the subjective and individualized nature of such decision followed by <u>Krebs v N.Y.State Div. Of Parole</u>, 2009 WL 2567779, *10 (N.D.N.Y. Aug 17, 2009) ("Consideration of the seriousness of the Plaintiff's crime is permitted, and the fact that the nature of the crime has been considered does not evidence that the Board acted arbitrarily.").

In *Franks,* Sixth Circuit Panel suggested that the *Engquist* decision should not control cases that are outside the realm of government employment. The Sixth Circuit stated:

> More recently, *Engquist v. Oregon Department of Agriculture* held that the "'class of one' theory of equal protection has no place in the public employment context."

- 12 -

> --- U.S. ----, 128 S.Ct. 2146, 2148-49, 170 L.Ed.2d 975 (2008). Some courts have read *Engquist* broadly to suggest that individualized, discretionary decisions can rarely, if ever, be challenged in class-of-one actions. *See*, *e.g., United States v. Moore*, 543 F.3d 891, 900-01 (7th Cir. 2008); *Adams v. Meloy*, 287 Fed. Appx. 531, 534 (7th Cir. 2008). But *Engquist's* holding was specifically limited to the public-employment context, the concerns of which the Court described as "unique." *Engquist*, 128 S.Ct. at 2156, 2151. And its reliance on the "crucial difference" between government acting as sovereign and government acting as employer, *id.* at 2151, suggests that *Engquist's* discussion of discretionary decisionmaking should not control the case at hand.

*Franks,* 312 F. App'x at 766 n.3. As footnote 5 illustrates, the *Engquist* rationale has not been limited to the public-employment context by post-<u>Frank</u> decisions. Numerous courts have interpreted the decision to include inherently discretionary decision-making by the government, not just decisions in the employment context.[5] Further, the Sixth Circuit's interpretation of *Engquist* in *Franks* was unnecessary to its disposition of the appeal, and, thus, was dicta, which has no precedential effect. *See Coburn v. Rockwell Automation, Inc.,* 238 F. App'x 112, 127 n.2 (6th Cir. 2007) ("We are, of course, not bound by prior panels' dicta.") (citing *Williams v. Anderson,* 460 F.3d 789, 811 (6th Cir. 2006)). Because this Court is not therefore bound by the Sixth Circuit's interpretation of *Engquist* in *Franks,* 312 F. App'x at 766 n.3, subsequent Sixth Circuit cases and Plaintiff's claims relate to the inherently discretionary decision of the Michigan Parole Board in denying his parole, this Court finds that Plaintiff's circumstances fit *Engquist's* rationale. Accordingly, Plaintiff fails to state a class-of-one theory equal protection claim.

        2.    **Class-of-One Claim under *Olech***

---

[5]*See also Robertson,* 2008 WL 4822218, at *9-10 (plaintiff, who claimed that police officers and a towing company targeted him for tickets and harassment, failed to state a class-of-one claim due to the broad discretion in the *Engquist* decision); *Ponterio v. Kaye,* 328 F. App'x 671 (2d Cir. 2009) (*Engquist* barred plaintiff's equal protection claim because of the discretion of defendants in deciding the applications for certification of retired state judges); *Douglas Asphalt Co. v. Qore, Inc.,* 541 F.3d 1269, 1273-275 (11th Cir. 2008) (class-of-one theory was not available to a highway paving contractor, who alleged that the DOT singled him out for less favorable treatment than other contractors); *U.S. v. Moore*, 543 F.3d 891, 900 (7th Cir. 2008) (class-of-one theory was unavailable to plaintiff under *Engquist*).

Even if the class-of-one theory is available to Plaintiff, Plaintiff must establish an equal protection violation based on the rational basis analysis. *See Olech*, 528 U.S. at 564. Plaintiff must show that the Michigan Parole Board's decisions intentionally differentiated between similarly situated persons and were not rationally related to any conceivable legitimate governmental purpose or combination of purposes. *See id.* Before this Court will consider a rational basis analysis, however, Plaintiff must allege that he is being treated differently from similarly situated individuals. The Sixth Circuit has repeatedly held that a court is not required to analyze the rational-basis test if the plaintiff fails to demonstrate that the defendant treated him differently from similarly situated individuals. *Taylor Acquisitions, L.L.C.*, 313 F. App'x at 836 (for a class-of-one equal protection claim, the plaintiff must first prove that he or she has been treated differently from similarly situated individuals) (citing *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008)). "To satisfy this threshold inquiry, [the plaintiff] must allege that [the plaintiff] and other individuals who were treated differently were similarly situated *in all material respects*." *JDC,* 644 F.Supp.2d at 926 (citing *Taylor Acquisitions,* 313 F. App'x at 836) (citing *TriHealth,* 430 F.3d at 790) (emphasis in original).

Plaintiff alleges that the Michigan Parole Board granted parole to repeat and violent offenders imprisoned in higher security prisons than Plaintiff. He also claims that those offenders have not displayed the "rehabilitative advancements" that Plaintiff has accomplished. (Compl. at 12.) Plaintiff, however, fails to identify the names of those prisoners, the convictions for which they were imprisoned, their prior criminal record, or their conduct while incarcerated. Plaintiff also does not claim that those offenders were convicted of similar crimes as Plaintiff or that they had a similar prison history as Plaintiff. Finally, Plaintiff's claim fails because he has not alleged that those

inmates who had been granted parole were similarly situated to him "in *all respects that are material to the parole assessment*." *Rice v. Mich. Parole Bd.,* No. 1:05-cv-549, 2008 WL 5156760, *7 (W.D. Mich. Dec. 9, 2008) (Bell,J.) (citing *Barker,* 2006 WL 305643 at *3) (citing *Linger v. Akram,* 23 F. App'x 248, 252 n.5 (6th Cir. 2001)) (emphasis in original). Accordingly, Plaintiff has not established that those inmates were similarly situated to Plaintiff in all material respects.

Even if Plaintiff satisfied the threshold inquiry for similarly situated individuals, he must still demonstrate that the Michigan Parole Board's decision was not rationally related to a legitimate government purpose. "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Club Italia Soccer & Sports Org., Inc.,* 470 F.3d at 298 (quoting *Warren,* 411 F.3d at 710). The plaintiff bears the burden of demonstrating that the government lacks a rational basis, and he may satisfy this burden either by negating "'every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" *Id.* (quoting *Warren,* 411 F.3d at 711). Where there are "plausible reasons" for the state's action, a court's inquiry is at an end; "[i]t is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the . . . decision[.]'" *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)). Further, the Court's determination in this case must be made in light of the constant admonition by the Supreme Court that the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Washington v. Harper*, 494 U.S. 210, 223-24 (1990); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *Bell*

*v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125-26 (1977).

Plaintiff's equal protection claim fails because the Michigan Parole Board's decision was rationally related to a legitimate governmental purpose. "The purpose of parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime." *People v. Gregorczyk*, 443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted). Protection of public safety is a stated purpose of Michigan's parole statutes. *Hopkins v. Mich. Parole Bd.*, 604 N.W.2d 686, 689 (Mich. Ct. App. 1999) ("First and foremost, [the Michigan Parole Board] may not grant a prisoner liberty on parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'") (quoting MICH. COMP. LAWS § 791.233(1)(a)). Preventing the early release of potentially violent inmates is a legitimate governmental interest. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule which provided that inmates having prior convictions for homicide, forcible rape, robbery, or aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates"). In addition, Michigan's statutory scheme furthers the rights of victims, *see* MICH. COMP. LAWS § 780.771, which is also a legitimate and rational state purpose. *See Johnson v. Rodriguez*, 110 F.3d 299, 307 n.11 (5th Cir. 1997) (reversing district court finding that Texas parole scheme violated prisoners' equal protection rights). In sum, the protection of

public safety, the prevention of the early release of violent inmates, and furthering victim rights are all legitimate government purposes.

Here, it was patently reasonable for the Michigan Parole Board to conclude that Plaintiff's pedophilia presented a particular danger to society, even greater than that presented by some other violent offenders. Accordingly, the decision of the Michigan Parole Board to deny Plaintiff's parole based on his crime and prison history are entirely legitimate and rational.

Moreover, Plaintiff cannot demonstrate that the Michigan Parole Board's actions were motivated by ill-will or animus. *See Club Italia Soccer & Sports Org., Inc.,* 470 F.3d at 298 (quoting *Warren,* 411 F.3d at 711). "To demonstrate animus or ill-will, 'a plaintiff must prove that the challenged government actions were motivated by personal malice *unrelated to the defendant's official duties.*'" *Taylor Acquisitions, L.L.C.*, 313 F. App'x at 837-38 (citing *Klimik v. Kent County Sheriff's Dep't,* 91 F. App'x 396, 401 (6th Cir. 2004) (citation omitted) (emphasis in original). Plaintiff alleges that the Parole Board acted on the basis of personal animus by inserting falsified information into Plaintiff's prisoner file and by denying Plaintiff's parole based on that information. However, Plaintiff does not elaborate on why the Parole Board would have any personal animus towards him. *See Twombly*, 550 U.S. at 555; *Ashcroft*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Further, there is no indication that the Parole Board intentionally denied Plaintiff's parole because of animus toward him personally. The Parole Board cited Plaintiff's assaultive crime and correctional adjustment in four out of the five of his parole denials as reasons to deny his parole. In all five denials of Plaintiff's parole, the Parole Board cited Plaintiff's sexually assaultive crime

against a young family member as a reason to deny his parole. Those are valid reasons to deny Plaintiff's parole. Therefore, Plaintiff fails to allege that any difference in treatment was intentional.

In light of the numerous factors considered by the Parole Board in determining whether parole was appropriate, and the legitimate government interest in regulating parole, Plaintiff fails to state a class-of-one equal protection claim.

B. **State Law**

Plaintiff alleges that the Michigan Parole Board violated Michigan policies by knowingly inserting false documents into his prison file. The Michigan Parole Board's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *See Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. As a consequence, to the extent that Plaintiff suggests that the insertion and retention of false information in his prison file violates MDOC policy, Plaintiff's allegations fail to state a constitutional claim.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court dismisses the complaint for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

The separate Judgement required by Fed R. Cn.P.58, consistent with this opinion, will be entered contemporaneously.


Dated: __March 31, 2010__  /s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge